U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 AUG 28 PM 3:25

CLERK

BY ___pjl___
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KYLE MONTANIO, Individually and on )
Behalf of All Others Similarly Situated, )
)
Plaintiff, )
)
v. ) Case No. 5:16-cv-19
)
KEURIG GREEN MOUNTAIN, INC., )
BRIAN P. KELLEY, NORMAN H. )
WESLEY, BARBARA D. CARLINI, JOHN )
D. HAYES, A.D. DAVID MACKAY, )
MICHAEL J. MARDY, HINDA MILLER, )
DAVID E. MORAN, JOSÉ OCTAVIO )
REYES LAGUNES, SUSAN SALTZBART )
KILSBY, ROBERT A. STEELE, JAB )
HOLDINGS B.V., ACORN HOLDINGS )
B.V., and MAPLE HOLDINGS )
ACQUISITION CORP., )
)
Defendants. )

**OPINION AND ORDER ON MOTION FOR RECONSIDERATION OR,
ALTERNATIVELY, TO REOPEN THE JUDGMENT TO MODIFY DISMISSAL TO BE
WITHOUT PREJUDICE AND PERMIT LEAVE TO FILE AMENDED PLEADING
(Doc. 55)**

This is a direct shareholder class action lawsuit in which the lead plaintiff, Kyle Montanio, a former shareholder of Keurig Green Mountain, Inc. ("Keurig"), has sued Keurig, Keurig's former CEO, members of Keurig's former Board of Directors, and the corporate investors that bought out Keurig in a deal completed in March 2016. Plaintiff alleges that, in connection with the proposed merger, Defendants disseminated a materially false and misleading proxy statement, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9.

Defendants moved to dismiss the first amended complaint for failure to state a claim. (Docs. 27, 32.) The court granted the motions, dismissed the case, and entered judgment. (Docs. 52, 53.)

Plaintiff has now moved for reconsideration, or, in the alternative, for the court to reopen the judgment and permit Plaintiff to file a second amended complaint. (Doc. 55.) The court assumes familiarity with its prior Opinion and Order (Doc. 52). *Montanio v. Keurig Green Mountain, Inc.*, 237 F. Supp. 3d 163 (D. Vt. 2017).

## Motion for Reconsideration

A court may consider a motion for reconsideration filed under Federal Rule of Civil Procedure 59(e). *Assoc. for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 553 (2d Cir. 1995). Motions for reconsideration should not be used to repackage arguments previously rejected. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015). Rule 59(e) is not intended to provide "a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 53 (2d Cir. 2012). A motion for reconsideration under Rule 59(e) is properly brought under one of four theories: the judgment depends upon a manifest error of fact or law, there is newly discovered or previously unavailable evidence, it is necessary to prevent a manifest injustice, or there has been an intervening change in controlling law. Charles Alan Wright, et al., 11 Federal Practice & Procedure § 2810.1 (3d ed. 2012).

Plaintiff's motion for reconsideration focuses on one aspect of the court's prior opinion: its conclusion that the complaint failed to allege any basis to conclude that the Board's opinion in favor of applying a 50% probability weighting to its projections for Keurig Kold was objectively false (Doc. 52 at 12–16). The motion for reconsideration argues that the court overlooked important facts alleged in the complaint and therefore incorrectly distinguished the complaint in

2

this case from the one at issue in *In re Hot Topic, Inc. Securities Litigation*, No. CV 13-02939, 2014 WL 7499375 (C.D. Cal. May 2, 2014).

The court considers the arguments in the order they are presented in the motion. But first, it discusses an issue relevant to the analysis of nearly every argument presented: what facts must be alleged in a complaint to sufficiently state that a belief or opinion asserted in a proxy statement is objectively false?

I.   **Pleading Standard for Section 14(a) and Rule 14a-9 and Alleging Objective Falsity**

To state a claim under Section 14(a) and Rule 14a-9(a), a plaintiff must allege that: "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs' injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004); *accord Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 226 (S.D.N.Y. 2009).

A statement of belief or opinion—such as the financial projections at issue in this case—does not get a free pass in the world of proxy litigation. Such a statement may constitute a material misrepresentation, if it is both subjectively false—in that it misstates the actual opinions, beliefs, or motivation of the speaker—*and* objectively false—in that it is "false or misleading with respect to the underlying subject matter [the statement] address[es]." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 111 (2d Cir. 2011) (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1091–96 (1991)).

Additionally, claims under Section 14(a) are subject to a heightened pleading standard under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). *See Bond Opportunity Fund*, 87 F. App'x at 773. Under that statute, a complaint alleging that defendants

3

"made an untrue statement of material fact" or material omission must: (1) "specify each statement alleged to have been misleading"; (2) "the reason or reasons why the statement is misleading"; and (3) "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

One court has summarized these standards in this way: a claim under Section 14(a) "charging that a statement of opinion . . . is materially misleading must allege with particularity provable facts to demonstrate" both subjective and objective falsity. *Fisher v. Kanas*, 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006) (internal quotation marks omitted). What constitutes a "provable fact" that "demonstrates objective falsity"? The court turns to cases evaluating allegations of objective falsity in similar contexts: claims of securities fraud under Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

The objective falsity of a financial projection frequently depends upon pleading and proof of the use of underlying cost or revenue figures which are untrue or inconsistent with the real figures. For instance, in *In re NovaGold Resources Inc. Securities Litigation*, 629 F. Supp. 2d 272, 276 (S.D.N.Y. 2009), the court evaluated whether cost estimates for a copper and gold mining project were false or misleading. In a "final feasibility study" for the project, released in late 2006, the company estimated that the project would cost $2.2 billion.[1] *Id.* at 278. The company continued to tout and publicly rely on that estimate through fall 2007. *Id.* at 277–78, 299. But according to the complaint, the plaintiffs had learned from confidential informants that internal cost estimates were $2.7 billion in early 2006, and by summer 2007, "construction managers were discussing costs approaching $3.7 billion." *Id.* at 299. At the end of

---

[1] The sums are in Canadian dollars.

4

November 2007, the company belatedly revised the cost estimate, increasing it to $5 billion. *Id.* The court concluded that, based on these allegations, "[t]he plaintiff has pleaded with sufficient particularity facts supporting an inference that [the company] knew that . . . its cost estimate of [$2.2 billion was] unreliable and misleading shortly after release, if not at release." *Id.*

In *Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113 (D. Ariz. 2010), the complaint alleged that projections regarding future events and attendance at a proposed convention center were false or misleading. The official projections announced by the defendants were that the event center would average 133 events annually with a total attendance of 480,000. *Id.* at 1133. The court found that the complaint sufficiently alleged this projection to be objectively misleading or false because the projections "omitted critical information contained" in two other reports, which relied on demographic data and other information. *Id.* at 1132–33. Those reports, which the defendants had either commissioned or otherwise had knowledge of, "tend[ed] to indicate that the [metro area in question] could not be expected to generate the number of events and attendees that were projected." *Id.* at 1132–33. One report estimated that the event center would "draw approximately 78 events per year with an annual attendance of approximately 202,500." *Id.* The other estimated 97 to 102 annual events with total attendance of 321,000. *Id.* at 1133. In light of these allegations, the court concluded, the defendants "may have disregarded [the other reports] and made event, attendance, and revenue projections (predicated on event and attendance calculations) that were unreasonable in light of the internal data at their disposal." *Id.*

In comparison, allegations of objective falsity are insufficient when they fail to identify particular facts that undermine or contradict the basis for the projection at issue. In *In re Salomon Analyst Level 3 Litigation*, 350 F. Supp. 2d 477, 481 (S.D.N.Y. 2004), the complaint

5

alleged that market research reports produced by a financial analyst were false and misleading in their rosy predictions of future success for specific broadband companies and their recommendations to buy stock in those companies. The court concluded that the plaintiffs had failed to allege objective falsity because the plaintiffs "[had] not identified any objective facts or data that are misrepresented in the reports." *Id.* at 491, 498. The court rejected as insufficient allegations relating to emails written by other employees months or years after the reports were issued:

> Furthermore, plaintiffs' efforts to undermine the analysis or models employed by [the analyst] as false or objectively unreasonable are either refuted on the face of the reports themselves, or rely entirely on mischaracterizations of emails written by *other* SSB employees months or even years after the allegedly false research reports, which is plainly insufficient to adequately plead that the analysis or models were objectively false or misrepresented the true opinions of Grubman or his staff at the time the reports were issued.

*Id.* at 491. Other allegations—including that the analyst's belief in the demand for internet bandwidth proved wrong, that his valuation models "predicted very high return rates," that he was compensated handsomely for "his role as evangelist for the broadband future," and that there were significant conflicts of interest between the research and investment banking arms of his employer—were also insufficient. *Id.* at 492–93. At best, the court concluded, these allegations "accuse[d] [the analyst] of being unduly, even egregiously, optimistic about the future prospects of these companies," and that he "was incompetent, a bad analyst, even careless." *Id.* at 491–92.[2]

In *Frazier v. VitalWorks, Inc.*, 341 F. Supp. 2d 142, 158 (D. Conn. 2004), the complaint alleged that VitalWorks, a software company, issued projections for future revenues for

---

[2] The court did permit claims to go forward regarding alleged falsity in reports that the analyst issued in which he recommended buying stock in the broadband companies where those reports were issued *after* he had sent an internal email stating that he believed the companies were "going under." *In re Salomon Analyst*, 350 F. Supp. 2d at 493.

6

upcoming fiscal years that were false and misleading. *Id.* But the complaint did not identify any facts or data regarding the expected or actual sales for the two product lines at issue that would have undermined the company's statements about current growth and the revenue projections premised on those statements. *Id.* at 154, 156–57. As the court explained: "The issue is whether there exist underlying facts that gave defendants reason to know that their projections were false and misleading. Financial projections can be fraudulent if the company bases them upon sales data or other numbers—current or historical material facts—that the company knows to be false or inaccurate." *Id.* at 158. Because the complaint "fail[ed] to allege facts showing that the underlying statements were false," it failed to state a claim that the future projections were misleading or fraudulent. *Id.* at 158–59.

These cases illustrate the principle that a sufficient allegation of objective falsity requires the pleading of particular facts that, if themselves proven, would show that the opinion or projection was based on assumptions contradicted by real-world facts or on other inaccurate data. It is insufficient to allege facts which merely suggest the possibility that the projection might be incorrect. The allegations must identify with specificity the false data from which the defendant derived a misleading projection. With this discussion in mind, the court turns to the specific arguments raised by Plaintiff in his motion for reconsideration.

## II. Arguments Raised in Motion for Reconsideration

Plaintiff first argues that the court "overlooked the fact that, as in *Hot Topic*, the 50% probability weighting itself was a 'manipulation of multiple assumptions and variables to support the insiders' preferred projections.'" (Doc. 55 at 5.)

The court disagrees. The revised projections adopted by Keurig's Board in the proxy statement consisted of a single adjustment to earlier financial projections: the application of a

50% probability weighting to the projected "unlevered free cash flow"[3] for Keurig Kold in the years 2021 to 2025. Plaintiff contends that the 50% probability weighting is an aggregation of changes in a number of assumptions and variables. No allegations in the complaint, nor any language in the proxy statement itself, support this position. But even if they did, the complaint would not allege objective falsity with sufficient specificity. In *Hot Topic*, the complaint alleged not only that the "Revised Projections" preferred by the Board differed from the earlier "LRP Projections" by the adjustment of several distinct and identified assumptions and variables, but also alleged *specific facts* which demonstrated that each of those adjustments was unfounded. 2014 WL 7499375, at *2. There are no such allegations in this case.

Plaintiff next contends that the court wrongly concluded that, as alleged, the unweighted projections were never "actually used as a benchmark for the company's success." (Doc. 55 at 6 (*quoting* Doc. 52 at 14).) He points to four allegations: that management shared the unweighted projections with financing sources earlier in 2015 (Doc. 28-2 at 44), that, at a meeting 44 days ahead of the launch of Keurig Kold, management shared with the Board updated versions of the projections without applying a weighting (Doc. 22 ¶ 67), and that management may have relied on the projections in rejecting Party X's offer to buy the company in January 2015, and to authorize a dividend increase on February 4, 2015 (*id.* ¶¶ 54, 60).

---

[3] Unlevered free cash flow "is a company's cash flow before taking interest payments into account." *Unlevered Free Cash Flow*, Investopedia, http://www.investopedia.com/terms/u/unlevered-free-cash-flow-ufcf.asp (last visited August 28, 2017). It "shows how much cash is available to the firm before taking financial obligations into account." *Id.*

8

Again, the court must disagree. None of these facts tend to prove the falsity of the 50% probability weighting or show that the application of the 50% probability weighting depended on either inaccurate data or assumptions contradicted by real-world facts.[4]

Third, Plaintiff focuses on one of the three reasons given by the *Hot Topic* court for concluding that the Revised Projections depended on "flawed and inaccurate assumptions": that the Revised Projections "assumed a slower build out of stores than the LRP Projections—a build out that Plaintiff suggests is contrary to the Company's stated goals to continue to open new Torrid stores, Hot Topic outlet stores, and Blackheart stores." 2014 WL 7499375, at *6 (citation omitted). (Doc. 55 at 7.) Plaintiff argues that the 50% probability weighting here similarly contradicts the Board's earlier "optimistic public statements regarding their faith in the future success of Keurig Kold, which suggest[s] that management's recommendation [of the 50% probability weighting] was based on unreasonable assumptions that undermined the reliability of management's recommendation." (*Id.*) Plaintiff argues that this analogy has particular force with respect to the Revised Projections' assumed slower build out of Blackheart stores, which, at the time were a "new test retail concept," similar to Keurig Kold, also a new product. (*Id.* at 7 (*quoting Hot Topic*, 2014 WL 7499375, at *1).)

The court is unpersuaded. The court views the other reasons relied on by the *Hot Topic* court—that the Revised Projections lowered estimates of gross revenue growth despite "the Company's strong improvements in this area" in the previous two years, and specifically "moderated downwards" estimated growth from the Torrid division despite earlier statements from the Board declaring growth in that division a "number one priority" and "the major

---

[4] Additionally, as Defendants point out (Doc. 59 at 11 n.4), the complaint does not actually allege that Defendants relied on or considered the unweighted projections in either rejecting Party X's offer or in approving the dividend. This assertion by Plaintiff appears for the first time in his motion for reconsideration.

9

highlight"—to be much more determinative. These observations are consistent with the principle articulated in the cases discussed above: for a plaintiff to sufficiently allege that an opinion or financial projection is objectively false, he must allege concrete (and typically quantifiable) facts regarding either past or present performance or valuation that contradict or undermine the opinion.

The court is skeptical that a financial projection could be objectively false solely because it included an assumption of a "slower build out of stores" as compared to earlier "stated goals to continue to open new" stores. But even if this were sufficient, the recommended 50% probability weighting in this case is distinguishable. Determining the number of new stores opened and the rate at which they were opened in the recent past would be easily comparable to the lower build out rate assumed in the Revised Projections. In comparison, Plaintiff suggests that the 50% probability weighting squarely contradicted, in his words, the Board's recent "optimistic public statements regarding their faith in the future success of Keurig Kold." (Doc. 55 at 7.) Plaintiff's characterization of these statements reveals why they cannot serve as a basis for finding that the 50% probability weighting is objectively false. "Optimistic" statements regarding "faith in the future success" of a not-yet-released product are common expressions associated with sales efforts, and would themselves be inactionable as a basis for a securities fraud or misrepresentation lawsuit. *In re NovaGold*, 629 F. Supp. 2d at 301 ("Simple 'expressions of puffery and corporate optimism' do not violate securities laws, as companies 'are not required to take a gloomy, fearful or defeatist view of the future.'" (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)). Since they are neither true nor false, they cannot serve as a basis to conclude that a subsequent and less rosy prediction of that product's success was objectively false.

Fourth, Plaintiff contends that these "previous optimistic statements" have "probative value . . . as strong circumstantial evidence of the existence of underlying undisclosed facts that would undermine the objective accuracy of the 50% probability weighting." (Doc. 55 at 7–8.) Other allegations, Plaintiff asserts, also provide circumstantial evidence of undisclosed facts that would undermine the weighting's accuracy. These include: Keurig's $125 million investment in Keurig Kold, Coca-Cola's investment of $1.25 billion in Keurig Kold and desire to make available Coca-Cola branded products through Keurig Kold, the sharing of the unweighted projections with a financing source in early 2015, the naming of Keurig Kold as a 2016 finalist for the Edison Awards, management's boast of its "successful track record of introducing disruptive and innovative products, and the revision of the projections without the application of a probability weighting 44 days before the launch of Keurig Kold. (*Id.* at 8–9.)

This argument misstates the standard for pleading that a statement of opinion is materially misleading. Plaintiff offers no legal authority for his assertion that allegations need only constitute "strong circumstantial evidence of the existence of underlying undisclosed facts" that would render an opinion objectively false. Instead, those underlying undisclosed facts *themselves* must be pled, for a complaint "must allege with particularity *provable facts* to *demonstrate* that the statement of opinion is both objectively and subjectively false." *Fisher*, 467 F. Supp. 2d at 282. None of these allegations, if proven, *demonstrate* that the application of the 50% probability weighting either depended on false assumptions or inaccurate data or ignored known facts that contradicted the weighting adjustment. In other words, they do not show that the 50% probability weighting was objectively false.

Fifth, Plaintiff contends that the court "overlooked relevant factual allegations, drew inferences in Defendants' favor, and made a finding of fact in Defendants' favor." (Doc. 55

11

at 10.) He points to the court's statement in its Opinion and Order that "the 50% probability weighting is a warning that projected earnings in the period 5–10 years from the date of the proxy must be treated with caution and significantly discounted as a basis for valuation due to the untried nature of the product." (Doc. 52 at 15–16.) Instead, Plaintiff contends, it is a question of fact, unresolvable at pleading, whether the weighting is an "acceptable valuation method[] by which experienced financial advisors" might consider "the uncertainty of an untried product line" in valuing a company. (Doc. 55 at 10–12.)

The court agrees that the sentence identified by Plaintiff, read in isolation, might suggest that the court inappropriately drew an inference or found a fact in favor of Defendants on a motion to dismiss. But it is not so in context. In the preceding sentences, the court explained that the complaint alleged "neither past experience with the Kold product line nor other relevant information supporting the claim that the 50% probability weighting was objectively false. Regardless of its members' subjective motives, the Board cannot be plausibly accused of concealing or making up information because no such information has been identified by Plaintiff." (Doc. 52 at 15 (citation omitted).) In the absence of such allegations, the complaint therefore offers no basis to doubt the reason given in the proxy statement for applying the 50% probability weighting—that it was "an appropriate adjustment given the risks associated with the launch of the new platform," and that it was "appropriate to adjust for the application of Keurig's discount rate (9% to 11%) in calculating the discounted cash flow valuation of the Kold business, which was essentially a start-up business" (Doc. 28-2 at 49). The sentence identified merely paraphrases this language from the proxy statement.

Nor is the complaint saved by Plaintiff's contention that he should be given the opportunity to prove that the 50% probability weighting is a valuation method that is either

unorthodox or unaccepted by accountants or experienced financial advisors. The proxy explicitly warns readers that the financial projections themselves were not calculated in accordance with any accounting or valuation standards,[5] so it makes little sense to permit a claim premised on the "provable fact" that a probability weighting applied to those financial projections was not an orthodox valuation method.

The court denies Plaintiff's motion for reconsideration.

## Motion for Leave to Amend the Complaint

In the alternative, Plaintiff moves to reopen the judgment and permit the filing of a second amended complaint. (Doc. 55 at 12–14.)

Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely, as justice requires. *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015). Generally, it should be granted unless the court concludes that the motion for leave to amend was made with "undue delay, bad faith or [a] dilatory motive," where the plaintiff has repeatedly fail to cure

---

[5] The proxy statement provides:

> The financial projections are unaudited and were not prepared with a view toward public disclosure or compliance with the guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of prospective financial information or generally acceptable accounting principles as applied in the U.S. (which we refer to as "*GAAP*") or the published guidelines of the SEC regarding projections and the use of non-GAAP financial measures.
>
> . . .
>
> In the view of Keurig's management, the financial projections were prepared on a reasonable basis reflecting management's best available estimates and judgments regarding Keurig's future financial performance. The financial projections are not facts and should not be relied upon as necessarily indicative of actual future results. You are cautioned not to place undue reliance on the financial projections.

(Doc. 28-2 at 56.)

deficiencies in the complaint, or where amendment would be futile or unduly prejudicial to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

When leave to amend is sought after judgment has been entered, the motion "must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011). But "considerations of finality do not always foreclose the possibility of amendment." *Id.* Instead, the court should "take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Id.*

In present circumstances, the court sees little reason to apply a more stringent standard for evaluating Plaintiff's motion than the liberal standard embodied by Rule 15. Plaintiff filed his first amended complaint (Doc. 22) before any motions to dismiss were filed and the court immediately entered judgment after granting the motions to dismiss. (Docs. 52, 53.) This is Plaintiff's first attempt to amend in light of deficiencies in the complaint identified by Defendants and the court.

Plaintiff's proposed second amended complaint is a comprehensive rewrite of the first amended complaint. But despite these revisions, Plaintiff's amended complaint sets out just two newly alleged facts. The first is the only new allegation emphasized in Plaintiff's motion itself. (Doc. 55 at 13.) It is that JAB Holdings pursued an acquisition of Keurig because it had a "goal of creating a coffee empire," and so was uninterested "in purchasing the Keurig Kold line for fair value." (Doc. 55-2 ¶ 10.) Moreover, Keurig and the other Defendants *knew* that JAB Holdings

14

was uninterested in purchasing the Keurig Kold line, and that it was for this reason that they heavily discounted their projections for Keurig Kold. (*Id.* ¶ 17.)

This new allegation does not affect whether the complaint alleges the objective falsity of the 50% probability weighting. Even if it were proven that Keurig, its Board, and its senior management knew that JAB Holdings did not place an appropriate value on the Keurig Kold line, it would show only a *motive* for including the 50% probability weighting. But proof of a motive supplies support for the subjective element of falsity, which the court already has concluded has been adequately alleged, it is not an objective fact or undisclosed number which affects objective falsity.

The second new allegation is that the unweighted financial projections "*already assumed the risks associated with the launch of Keurig Kold.*" (Doc. 55-2 ¶ 16.) As a consequence, the application of the 50% probability weighting resulted in projections for Keurig Kold "that were *double-weighted* to account twice for the same risks." (*Id.* ¶ 68.)

There are two problems with this allegation. The first is procedural. While this fact appears in the proposed second amended complaint (Doc. 55-2 ¶¶ 16, 68), it is not mentioned, much less identified as material, in the motion for reconsideration or for leave to amend. (Doc. 55 at 12–14.) It is highlighted for the first time in Plaintiff's reply brief. (Doc. 63 at 5.)

Plaintiff considers the fact important, so he should have identified it—and all other new allegations that he believed material—in the motion to amend itself. It is not the court's responsibility to review a substantially rewritten 40-page proposed amended complaint for every new relevant allegation. *See U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009) (affirming denial of post-judgment motion for leave to amend and noting that court is "not obligated to ferret out well-hidden changes in a post-judgment amended pleading

without guidance from" the plaintiff); *Little v. Tall*, 195 F. Supp. 2d 199, 200 n.1 (D. Me. 2002) (stating that, in motion for leave to amend, plaintiff should "identify in the motion or a supporting memorandum any new factual allegations and legal claims in the proposed amended pleading"); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). And because Plaintiff waited until his reply brief to highlight this allegation, Defendants were deprived of an opportunity to argue that, even considering this allegation, amendment would be futile. Generally, courts do not consider arguments raised for the first time in a reply brief. *Patterson v. Balsamico*, 440 F.3d 104, 113 n.5 (2d Cir. 2006); *Klinker v. Furdiga*, 22 F. Supp. 3d 366, 367 n.1 (D. Vt. 2014). The court sees no reason to depart from this rule here.

The second problem with this allegation is substantive. It is true that the new allegation appears to go to the objective falsity of Defendants' endorsement of the 50% probability weighting. If the unweighted projections already accounted for the risks of Keurig Kold as "essentially a start-up business" (the justification given for the application of the 50% probability weighting in the proxy statement (Doc. 28-2 at 49)) then that would constitute an objective, undisclosed fact that would undermine the 50% probability weighting as an appropriate adjustment for the very same thing.

But it is hard to view this allegation as anything more than a shot in the dark. It is belied by the proxy statement itself. The unweighted Keurig Kold projections do not suggest that an adjustment to account for the intrinsic risks of launching a brand-new product line or start-up business already has been included. Instead they forecast a rosy future for Keurig Kold, with the product predicted to outpace Keurig Hot in gross revenue in the seventh year of the ten-year projections and outpace it in unlevered free cash flow in the eighth year. (Doc. 55-2 ¶ 46;

Doc. 28-2 at 58.)[6] Keurig Hot, as the complaint states, maintained a 61% market-share in the single-serve home and office coffee market. (Doc. 55-2 ¶¶ 8, 39.) It is unreasonable to infer that projections—which forecast that a company's untested product line would become more successful than the company's other product line which already dominated its market—had already been significantly discounted in light of the risks inherent in launching a new product. *See In re Salomon Analyst*, 350 F. Supp. 2d at 491 (rejecting arguments regarding objective falsity of opinions in financial reports that are "refuted on the face of the reports themselves").

While a court typically must accept factual allegations as true, it need not do so when they are contradicted by a controlling document incorporated into the complaint. *2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 199 (S.D.N.Y. 2015); *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 206 (S.D.N.Y. 2008).[7] The court concludes that Plaintiff's allegation in the proposed complaint—that the unweighted projections

---

[6] The last five years of the unweighted projections include in part the following (with dollar amounts in millions):

|  | 2021 | 2022 | 2023 | 2024 | 2025 |
|---|---|---|---|---|---|
| **Hot Revenue** | $6,176 | $6,553 | $6,934 | $7,292 | $7,644 |
| **Kold Revenue** | $5,289 | $6,960 | $8,279 | $9,194 | $9,826 |
| **Hot Unlevered Free Cash Flow** | $839 | $899 | $960 | $1,026 | $1,111 |
| **Kold Unlevered Free Cash Flow** | $138 | $565 | $1,067 | $1,325 | $1,244 |

[7] There is no question that the proxy statement itself is incorporated into a complaint alleging that the proxy statement is false and misleading.

"*already assumed the risks associated with the launch of Keurig Kold*" (Doc. 55-2 ¶ 16)—is contradicted by the projections in the proxy statement.

This conclusion is bolstered by this allegation's failure to meet the heightened pleading standard under the PSLRA, 15 U.S.C. § 78u-4(b)(1). As already noted, "if an allegation regarding [a misleading statement or omission] is made on information and belief, the complaint *shall state with particularity all facts on which that belief is formed.*" 15 U.S.C. § 78u-4(b)(1) (emphasis added). The Third Circuit has explained in the securities fraud context the significance of the particularity requirement with regard to allegations made on information and belief: "the complaint must not only state the allegations with factual particularity, but must also describe the sources of information with particularity, providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

The allegation in question is clearly made on information and belief—the complaint offers no specifics about when the unweighted projections were made or what assumptions underlie them[8]—and therefore must "state with particularity all facts" that support the belief. The proposed complaint falls short of this standard. It alleges that in "public statements regarding the anticipated launch of Keurig Kold, Keurig cautioned investors that the launch and future performance of the new device were subject to 'significant risks and uncertainties.' For example[], in its Form 10-K filed with the SEC on November 19, 2014, Keurig cautioned investors that '*our ongoing investment in the cold platform is risky.*'" (Doc. 55-2 ¶ 16 (alterations omitted).) The complaint repeats the allegations that Keurig's management shared

---

[8] The proxy statement lists assumptions incorporated into the projections for both Keurig Hot and Keurig Kold, but none concern the significant and inherent risks of launching Keurig Kold as an entirely new product. (Doc. 28-2 at 57.)

18

the projections with a financing source in early 2015 and updated the projections in August 2015 without applying a probability weighting and concludes, "[t]hus, management's projections already assumed the risks associated with the launch of Keurig Kold." (*Id.*)

But the complaint does not allege any connection between these allegations and the assumptions that were or were not incorporated into the unweighted financial projections, nor would it be reasonable to infer one. The proxy statement states that the projections were created in 2015, (Doc. 28-2 at 44) while many of the statements highlighted by Plaintiff were made before that. The projections as initially made were non-public, were unaudited, and were not created in accordance with any accounting or regulatory standards. (Doc. 28-2 at 56.) Bland statements in quarterly press releases recognizing the challenges facing a soon-to-be-released product do not permit an inference concerning the specific assumptions incorporated into non-public, unaudited projections. The same is true for the other allegations—that the projections were shared with a financing source in early 2015 and updated in August 2015. These do not provide any basis to conclude that the unweighted projections already accounted for the inherent risks of Keurig Kold, especially because, as already noted, the unweighted projections forecast that Keurig Kold would be a substantial success.

The court concludes that the proposed second amended complaint would not cure the deficiencies of the first amended complaint. It therefore denies the motion for leave to amend the complaint as futile.

## Conclusion

Plaintiff's Motion for Reconsideration or, in the Alternative, to Reopen the Judgement and Modify Dismissal and for Leave to File an Amended Complaint (Doc. 55) is DENIED.

Dated at Rutland, in the District of Vermont, this 28 day of August, 2017.

Geoffrey W. Crawford, Judge
United States District Court